Chief Justice Robertson,
delivered the opinion of the Court.
In 1812, Edward Dorsey, in consideration of a contemplated intermarriage between himself and Ann Boyd, which shortly afterwards was consummated, covenanted that she should retain and control, in all respects as a feme sole, the land and slaves” owned by her at the date of the covenant. After living together until about the year 1818, they separated, and never again cohabited with each other. In 1823, she filed a bill for a divorce, and for the appointment of a trustee to hold and preserve to her use, the property intended to be secured by the antenuptial agreement In 1824, she filed a separate bill for enforcing the agreement and for the preservation, in the mean time, of the property which it described.
*157 Before the latter Bill bad been answered, Edward Dorsey died intestate. Prior to his death the two bills had been consolidated. At the first term succeeding his death, the following entry was made on the record:
“On the 12th day of August, 1824, came the parties, by their counsel, and the death of the defendant was suggested to the court, by his counsel— whereupon, by consent of all parties, it is ordered’ that this suit be revived against the administrator and heirs of the decedent” — [naming them individually] — “and, by consent of all the parties, the following decree is to be entered — to wit:
“It is ordered and decreed that the defendants surrender to the complainant, ctll the property of every kind which they have in their possession, and which belonged to the complainant before her intermarriage with Edward Dorsey, deceased. It is further decreed and ordered that complainant relinquish to the defendants all claim, right, title, and interest which she may derive and be entitled to out of the estate of Edward Dorsey, as the widow of said Edward Dorsey. It is further ordered that the balance of the matters in dispute between the parties, be left to the arbitration and award ofWin. B. Booker and Dabney C. Cosby, csqrs. And, by the further consent of the parties, it is decreed, that the complainant account for all debts which she owed before her intermariage with Edward Dorsey, and also all legal costs of suit by Edward Dorsey, since the marriage, in and about the transaction of her business in courts of justice.”
At the May term, 1826, the appearance of ulh& parlies'1'1 was noted, the order of reference set aside, and the cause continued. At the Novcinhei term, 1826, a bill of revivor was filed against the administrators of the original defendant. At the May term, 1828, the following entry was made.
“ On motion of complainant, hv her counsel, ordered that, this cause be revived and carried on against Robert Dorsey and John 'H Geohagcn, ad ministrators of the defendant, who hath departed this life.”
Appearance.
At the November term, 1829, the following entry was made. •
£lCame the parties by their counsel, whereupon it is ordered that John Hughes, jr. he appointed commissioner to state and report the unsettled claims of the complainant so far as they are ojien for adjudication.” After the auditor hud reported, a decree was rendered in favor of the appellee for $789, against the administrators and heirs of the decedent, Edward Dorsey. To reverse that decree this appeal is prosecuted.
Two questions are presented. 1st. Were the apjrellnnts, or any of them made parties? 2d. Is the decree right on the merits?
I. Although the circuit court may have intended to shew, by the entry made in August, 1824, that the appellants voluntarily entered their appearance, this court cannot judicially construe the record as importing, with sufficient certainty, any such appearance hy them at that time. But as an order had been 'made for reviving the suit against the appellants, the entry made at the subsequent May term, 1826, stating that the parties apjiearcd, should be understood as meaning that the appellants appeared, because, if they were not considered parties, the entry, that the parties appeared, was not true, there having been no revivor against any other person, after the abatement. And the entry made in November, 1829, not only imports an appearance by the appellants, but also a recognition by them of the consent decree. And hence it might, if it were material, he inferred from all the entries, taken together, that the appellants had appeared and consented to the revival against them in August, 1824. Therefore, though the proceedings seem to have been unaccountably irregular, we feel no hesitation in deciding that the appellants were all made parties, in the lircuit court as early as the November term, 1829, if not sooner.
II. As the appellants had appeared prior to any bill of revivor, and as the consent decree seems to have been valid, and. of course, conclusive on the parties, the circuit court did not err in refusing to *159 permit the administrators to file an answer at the August term, 1830, especially as the answer then offerród could not, had it been admitted, have essentially effected tiie case.
nunuugn me husband has by an ante-nu¡ tial contract agreed that the wife may retain & control, in all resMPcts as a feme sole, the land & slaves owned by her before the mar iage, yet if she permit the husband to enjoy jointly with her self the use of ¡the slaves,she cannot recover from the representatives of the husband the value of the’ use of them by the husband.
Had there been no decree by consent the appellee would he entitled, even were the answer fiieu, to a decree for enforcing the covenant, as against the representatives of the covenantor. And she might have asserted legal claims* (resulting from the marriage,) which she surrendered in the consent decree, and have remained exempt from liabilities which she has thereby assumed. It would appear* therefore, disadvantageous to the appellants* to have that decree set aside, and tin’s court does not feel ail-, thorized to set it aside. But, in carrying into effect so much of it as was executory anti open to further controversy, the circuit court has, in some respects erred.
Edward Dorsey was not liable Tor the use of the slaves, whilst the appellee lived with him, and voluntarily permitted him, jointly with herself, to enjoy the use of them. The covenant, assured to her the right to appropriate to herself the exclusive dominion and use of the land and slaves. But when she chose not to exercise the one or enjoy the other, but preferred a joint use by herself and her husband, he was surely not liable to her for the value of such use.
It does not appear from the facts, as now exhibited, that the appellants should be held accountable for the use of any of the slaves by Edward Dorsey, except for the use of one named John, retained by him after the final separation from the appellee.' The amount decreed by the circuit court is altogether for the use of the "slaves, and exceeds the maximum which should be decreed for the use of John, since the separation. The last decree is, therefore, erroneous on the merits.
But, in remanding the cause, it is proper to notice .an error to the prejudice of the appellee.
Although the covenant included no other estate than land and slaves* yet the consent decree cons *160 prehends uctll the property of every kind,” which the' appellants had in possession at the date of ‘that decree, and which had belonged to the appellee prior to the marriage. The restoration of the personal property derived from her, and which had not been consumed, but remained in the possesion of any of the appellants (if any such did remain) may have been the chief consideration for relinquishing rights and assuming liabilities, as the appellee did by the consent decree, and as to which she is concluded by that decree. She should also have the full benefit of so much of it as may be advantageous to her. But in the last decree, rendered on the auditor’s report, the circuit court allowed nothing farther than negro hire.
Auditor required to report to the court all the testimony heard by bim or presented to him,
Cunningham and McHenry, for appellants; Rudd for appellee.
On the return of the case, the circuit court, if it shall be ascertained that the appellants were, at the date of the consent decree, possessed of any chattels which the appellee owned at the time of her marriage with Dorsey, such chattels, or the value thereof, should be decreed to her..
And, as the parties preferred that all the litigated facts should be reported by an auditor, the circuit court may again appoint an auditor for that purpose, instructing him specially concerning the facts to be ascertained, and the manner of auditing them, and requiring him to report all the testimony heard by him, or presented to him.
Decree reversed, and cause remanded for further proceedings consistent with this opinion. .